Filed 5/18/23  P. v. Limon CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

DANIEL MARTINEZ LIMON,

    Defendant and Appellant.

E079683

(Super.Ct.No. RIF118583)

OPINION

APPEAL from the Superior Court of Riverside County.  William S. Lebov, Judge. (Retired judge of the Yolo Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Eric Multhaup, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Alan L. Amman, Assistant Attorney General, and Kristen Kinnaird Chenelia, Deputy Attorney General, for Plaintiff and Respondent.

1

Defendant and appellant, Daniel Martinez Limon, filed a petition for resentencing pursuant to Penal Code former section 1170.95,[1] which the superior court denied. On appeal, defendant contends the court erred in denying his petition without holding an evidentiary hearing. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

On July 25, 2004, defendant's codefendant, Jesus Sanchez, drove his car alongside another vehicle containing six individuals. Defendant, the passenger in Sanchez's car, demanded to know where the individuals in the vehicle were from. One of the victims responded, "I ain't from nowhere, bro'. . . . I don't gang bang." Defendant responded, "This is South Side Fontana Locotes," and "What the fuck [are] you looking at?"

As Sanchez blocked the victims' vehicle with his car, defendant jumped out and fired a shotgun at the vehicle's front windshield, shattering it and striking three victims. Defendant later admitted aiming at the victims' vehicle and firing the shotgun. He expressed surprise that he injured three people because he was trying to hit the front of the truck.

---

[1] All further statutory references are to the Penal Code. Effective June 30, 2022, Assembly Bill No. 200 (2021-2022 Reg. Sess.) amended and renumbered section 1170.95 as section 1172.6. (Stats. 2022, ch. 58, § 10.)

[2] By order dated January 12, 2023, we granted respondent's request to take judicial notice of this court's opinion from defendant's appeal from the judgment. (*People v. Limon* (Oct. 13, 2006, E040000) [nonpub. opn.] (*Limon*).) We derive our factual recitation from *Limon*.

On October 19, 2005, a jury convicted defendant of eight criminal counts: three counts (counts 1, 3, and 4) of attempted murder (§§ 187, subd. (a) and 664); one count (count 2) of engaging in gang crime (§ 186.22, subd. (a)); three counts (counts 5, 6, and 7) of assault with a firearm (§ 245, subd. (a)(2)); and one count (count 8) of shooting at an occupied car. (§ 246.) Defendant was acquitted on count 9 for shooting from a car. (§ 12034, subd. (d).) Additionally, the jury found true the charged enhancements for personally discharging a firearm, causing great bodily injury (§ 12022.53, subd. (d)); personally using a firearm. (§ 12022.5 subd. (a)); and committing all crimes, except count 2, to benefit a criminal street gang. (§ 186.22, subd. (a).) The jury also found true the deliberation enhancement (§ 664, subd. (a)(1)) on count 1 but not on counts 3 and 4. The court pronounced a collective sentence of 40 years to life.[3]

Defendant appealed. This court affirmed the judgment.

On April 13, 2022, defendant filed a form petition for resentencing pursuant to former section 1170.95 alleging he had been convicted under a theory in which malice was imputed to him solely on his participation in a crime and that he could not now be so convicted. At a hearing on August 12, 2022, at which defendant was represented by counsel, the People asked that the court deny the petition: "The opinion and instructions

---

[3] The jury apparently convicted Sanchez of the same *substantive* counts. However, that same month, the court granted Sanchez a mistrial based on juror misconduct. In September 2009, Sanchez pled guilty to the attempted murder of one of the victims (§§ 664/187, count 1) and the gang-related assault with a firearm as to another victim (§ 245, subd. (a)(2), count 3.) Additionally, Sanchez admitted his commission of the count 1 offense was gang related (§ 186.22), and that a principal personally discharged a firearm (§ 12022.53, subds. (c) and (e)). (*People v. Sanchez* (May 21, 2010, E049529) [nonpub. opn.].)

are in imaging, and I have provided them to counsel. The petitioner admits shotgunning the victim's car through the windshield, injuring three of the occupants. Nothing regarding natural and probable consequences or felony murder were contained in the instructions."

Defense counsel responded, "I did review the jury instructions, and while there is no natural and probable consequences or felony murder instructions, the jury was instructed on aiding and abetting, and I don't believe it will be appropriate at this time to dismiss the petition, and I ask to move on to the prima facie stage."

The People replied, "Aiding and abetting in and of itself does not qualify millions of cases involving aiding and abetting, but unless those two specific theories that are no longer viable were instructed to the defendant's jury, he is not eligible. So aiding and abetting does not constitute a grounds to have a prima facie hearing or go past the prima facie stage." The court denied the petition.

## II. DISCUSSION

Defendant contends the court erred in summarily denying his petition because the jury instructions, as given, could have allowed the jury to convict him without a finding of any malice: "The jury could have found that codefendant Sanchez committed the initial 'direct but ineffectual act' by swerving his vehicle in front of the victims' vehicle with the intent to instigate a homicidal confrontation. The jury could have further found that Sanchez's act of cutting off the victims' vehicle incited appellant to aid and abet in

4

the assault by getting out of the car and discharging his shotgun at the front of the vehicle, albeit without forming an intent to kill." We disagree.

"Senate Bill 1437 [(2017-2018 Reg. Sess.)] significantly limited the scope of the felony-murder rule to effectuate the Legislature's declared intent 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Strong* (2022) 13 Cal.5th 698, 707-708.) "Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended. [Citations.] Under newly enacted section 1172.6, the process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437 [citation]." (*Id.* at p. 708, fn. omitted.)

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for . . . relief, the prima facie inquiry . . . is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on

5

credibility grounds without first conducting an evidentiary hearing.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.) "[T]he 'prima facie bar was intentionally and correctly set very low.' " (*Ibid.*)

Where "the record of conviction does not conclusively negate the possibility that the jury found" the defendant guilty under a theory which imputed malice to him by the actions of the actual perpetrator, "an evidentiary hearing is required." (*People v. Langi* (2022) 73 Cal.App.5th 972, 984 (*Langi*).) On the other hand, where the record of conviction reflects that the defendant was not convicted under any theory of imputed malice, no evidentiary hearing is required. (*People v. Patton* (2023) 89 Cal.App.5th 649, 657 ["As the sole and actual perpetrator of the attempted murder of" the victim, a defendant "is ineligible for resentencing as a matter of law."]; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review dismissed Nov. 17, 2021, S263939, ["[T]he jury instructions themselves demonstrate[d] as a matter of law that [the defendant] could not make a prima facie showing that he is entitled to relief."]; *People v. Mancilla* (2021) 67 Cal.App.5th 854, 866-867 [Petition properly denied where jury verdicts necessarily show defendant was convicted under provocative act theory.]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 677 [Defendant could not make prima facie showing because the jury instructions reflected the defendant was per se ineligible for relief.].)

"It is well settled that Senate Bill 1437 'does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.' [Citation.] 'Under a direct aider and abettor liability theory, the prosecution must prove the person who is not the actual [perpetrator] "engaged in the requisite acts [actus reus] and had the requisite intent [mens rea]" to aid and abet the target crime of murder.' [Citation.] A direct aider and abettor's 'guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state.' [Citation.] ' "The aider and abettor doctrine merely makes aiders and abettors liable for their accomplices' actions as well as their own. It obviates the necessity to decide who was the aider and abettor and who [was] the direct perpetrator or to what extent each played which role." ' [Citation.] '[A]s long as each juror is convinced beyond a reasonable doubt that defendant is guilty of murder as that offense is defined by statute, it need not decide unanimously by which theory he is guilty. [Citations.] More specifically, the jury need not decide unanimously whether defendant was guilty as the aider and abettor or as the direct perpetrator.' [Citation.]" (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1252, fns. omitted; *People v. Medrano* (2021) 68 Cal.App.5th 177, 183 [" 'Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.' [Citation.]"].)

Here, the verdicts demonstrate the jury must have found defendant was the actual perpetrator who acted with intent to kill, not just an aider and abettor. The jury found

7

true allegations that in the commission of the attempted murders, defendant personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)). The jury also found that the count 1 attempted murder was willful, deliberate, and premeditated. The jury further convicted defendant of personally using a firearm (§ 12022.5, subd. (a), count 5) and that, in his commission of the count 6 and 7 offenses of assault with a firearm, he personally used a firearm (§ 12022.5, subd. (a)).

Because there was no evidence of more than one shooter, the jury necessarily concluded that defendant was the actual shooter who acted with intent to kill and personally inflicted the injuries to the victims. (*People v. Harden* (2022) 81 Cal.App.5th 45, 55 ["The natural meaning of 'personally inflicted' is that the defendant [himself] inflicted the injury."]; see *People v. Garrison* (2021) 73 Cal.App.5th 735, 743 [Where the only evidence of the use of a weapon is the shooting at a victim, a personal use of a weapon enhancement establishes that the defendant used the weapon to shoot for purposes of accomplishing the substantive offense.].)

Moreover, the jury here was not instructed on felony murder or the natural and probable consequences doctrine. Thus, defendant was not entitled to relief because he was convicted either as the direct perpetrator or, at minimum, as a direct aider and abettor.

As to the latter theory, the court instructed the jury using the language of CALJIC No. 3.01, which describes *direct* liability as an aider and abettor. (*People v. Whitson* (2022) 79 Cal.App.5th 22, 27; *People v. Amezcua and Flores* (2019) 6 Cal.5th 886, 918

8

[Instruction with CALCJIC 3.01 "reinforced the requirement that the jury find the intent-to-kill element proven in order to convict of murder or attempted murder on a theory of aiding and abetting."]; *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 847 [Court's instruction of jury with CALJIC 3.01 required "a conclusion that the defendant intended to further [the victim's] killing;" "the jury had to find that the defendant knew of the perpetrator's unlawful purpose and acted with the intent or purpose of committing, encouraging, or facilitating the crime."].) Thus, the jury could not have convicted defendant under any theory under which malice was imputed to him.

Defendant relies on *Langi* for the proposition that the court's instruction of the jury with CALJIC 3.01 did not, necessarily, require that defendant have acted with murderous intent. (*Langi*, *supra*, 73 Cal.App.5th at pp. 982-983 [CALJIC 3.01 "does not state that the aider and abettor must himself have known that the act he aided was life-threatening, or that he must himself have acted with indifference to human life"].) Thus, defendant argues the jury could have found him guilty of attempted murder solely for his participation in the crime.

*Langi* is distinguishable from the instant case in that the jury did not convict defendant of second degree murder; rather, the jury convicted defendant of three counts of attempted murder, each of which required findings of express malice, and on one of which the jury found defendant personally acted willfully, deliberately, and premeditatedly. (*People v. Coley* (2022) 77 Cal.App.5th 539, 547-548 ["An intent to kill is the equivalent of express malice, at least when there is no question of justification or

9

excuse, and by finding appellant guilty of attempted murder, the jury necessarily found he had personally harbored intent to kill or express malice . . . ."]; *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [A defendant who is guilty of attempted murder under a direct aiding and abetting theory must have the specific intent to kill.].) The trial court did not give CALJIC No. 8.31 or any other jury instruction on second degree murder or implied malice as in *Langi*. (*Langi*, *supra*, 73 Cal.App.5th at pp. 982-984.) Rather, the court instructed the jury that attempted murder required "express malice aforethought, namely, a specific intent to kill unlawfully another human being."

Moreover, in *Langi*, no weapon was used; the victim died when he fell and hit his head on the sidewalk. (*Langi*, *supra*, 73 Cal.App.5th at p. 976; *People v. Clements* (2022) 75 Cal.App.5th 276, 301 ["This case is different."].) Here, defendant fired a shotgun directly at the windshield of the victims' car. In this case, the attempted murder instructions did not include the potentially misleading, implied malice language discussed in *Langi*. Considered together with defendant's firing of a shotgun at the victims, there was no "ambiguity" that could have led the jury to conclude defendant simply aided a crime with implied malice. (*Langi*, at p. 982.)

The court's instructions to the jury, read in their entirety, did not permit the jury to convict defendant based only on his participation in a crime. Instead, the trial court properly instructed the jury on the principles of aiding and abetting regarding attempted murder, including the requirement that an aider and abettor share the perpetrator's intent. Thus, malice could not have been imputed to defendant solely on his participation in the

10

crime, as the instructions required the jury to find defendant personally acted with malice. Since the record of conviction reflects that the jury convicted defendant either as the direct perpetrator or, at minimum, as a direct aider and abettor, defendant failed to meet his burden of making a prima facie showing of entitlement to relief under amended section 1172.6.

## III.  DISPOSITION

The order denying defendant's petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER          
Acting P. J.

We concur:


MILLER          
             J.


MENETREZ          
             J.